The next case call for oral argument is Mostardi-Platt Associates v. Czerniejewski. Is that close? Here's me question. Okay. Counsel, please report. This is an appeal of dismissal by the Circuit Court of Judson County of plaintiffs. First amendment complaint for foreclosure of mechanics lien. Subsequent to that dismissal, the Circuit Court dismissed the cause of action with prejudice as to all parties intended. The question presented here is whether the Circuit Court erred in dismissing a plaintiff's First Amendment complaint for foreclosure of mechanics lien. In 2007, the defendants, Lunderden and Barber-Czerniejewski, as owners of real estate here in Jefferson County, Illinois, entered into a real estate purchase and sale agreement with AVL Anderson Associates, which provided an exclusive 24-month option to purchase the real estate that is the subject of a mechanics lien foreclosure complaint. That agreement provided in part that purchaser or their agents may enter upon the property to conduct such feasibility studies as may be reasonably necessary to enable the purchaser to make an election with regard to the exercise of the option. And it indicated that the seller agrees to assist the purchaser in any way in obtaining the required study. The real estate purchase and sale agreement further provided that the purchaser had the right to assign the agreement to any party it selected. Prior to Anderson's purchase of the contract and Czerniejewski's entering into the agreement, Anderson had represented a group of citizens of the township where this property is located, Blissville Township, that Power Holdings of Illinois LLC would be requiring approximately 160 acres to construct a coal gasification facility in that township and that the proposed plan had already undergone several approvals with the Illinois Environmental Protection Agency. After the execution of that real estate purchase and sale agreement, AVL Anderson Associates did assign their interest in the agreement as purchasers to Power Holdings of Illinois LLC. In May of 2006, that entity, Power Holdings of Illinois LLC, had entered into a contract with a plaintiff, Muscati Plant, whereby the plaintiff was to provide air quality construction permitting and dispersion modeling services for that coal gasification facility. The agreement was further revised in June of 2007, and that revision indicated that plaintiff's services were engineering supports and for dispersion modeling services. In earlier 2007, Power Holdings of Illinois LLC directed the plaintiff to focus its efforts on a construction permit for approval for this property, the Czerniejewski's property, which is the subject of the mechanics lien for closure complaint. In December 2007, the plaintiff alleges that it completed all work that was required to perform under its contract with Power Holdings of Illinois LLC and made its claim for a mechanics lien in the amount of $90,489. The complaint alleges that all of the plaintiff's work was necessary for the improvement of the property at issue with the coal gasification facility. The plaintiff then reported to the mechanics contractor's notice in a claim for mechanics lien, later amended, and brought his complaint to the proposed mechanics lien after notice received from the defendant's attorney. The motion to dismiss with prejudice under 2619 was filed by the defendants, which was heard by the circuit court in July 2008. The court did dismiss the complaint, gave leave to file a First Amendment complaint, which was done by the plaintiffs. We then filed a motion to continue. However, after motion to continue hearing, the circuit court brought up the motion to dismiss sua sponte and did so dismiss the First Amendment complaint. The trial court erred when it dismissed the First Amendment complaint by holding that the services rendered by the plaintiff were similar to a feasibility study, and therefore the plaintiff's services were not liable under the Mechanics Lien Act. The case that was relied upon by the circuit court was Hornstein v. Howell, where in that case the services of an architect were found by the court to have been used to let the defendant know what the character of an improvement that the lot was capable of sustaining and was not used for actually the construction of a building on that lot. That case, Hornstein v. Howell, is factually distinct from this case. While the coal gasification facility has not been built, it is undisputed that the powerholdings of Illinois LLC desired to build a coal gasification facility on this property at issue, and the powerholdings of Illinois LLC submitted an application to the Illinois EPA to receive approval to build that coal gasification facility. The work that was performed by the plaintiff is summarized in the affidavit of one of the people, employees, that worked on this project. The room of starting plan is attached as Exhibit A to the plaintiff's response to the initial motion to dismiss following this proceeding. And it makes it clear the plaintiff engaged in substantial engineering and modeling for the actual design of the coal gasification facility, which had an estimated cost of $1 billion. And the services of the plaintiff were necessary for powerholdings of Illinois LLC to receive a construction permit from the EPA to actually build the coal gasification facility because it would emit air pollution. The affidavit that I referred to of Joseph J. Massac also details plaintiff's work as directly incorporated into the design of the coal gasification facility, including stack heights, size and arrangement of the facility, building size constraints, and they provided support concerning location of different elements of this coal gasification facility, such as conveyors, pipelines, and evaluations and recommendations for the plant design. And it was specific to this work on the property of issue. Attached as Exhibit B into that affidavit of Joseph J. Massac is the site arrangement schematic for the coal gasification facility specific to the Chernovsky property as submitted to the Illinois EPA. And that schematic incorporates the revisions to the design that the plaintiff determined were necessary to avoid air quality problems so that a construction permit could be issued by the Illinois EPA. Plaintiff's work was directly incorporated into the design of the facility. That permit application to the Illinois EPA by the plaintiff on behalf of Power Holdings was to seek approval to actually construct the coal gasification facility. Therefore, the plaintiff's engineering support work was for the design of the facility itself. It was incorporated in the site schematic submitted to the Illinois EPA and is not similar to a feasibility study as followed by the circuit report. The cases cited in our brief show that the services of the plaintiff are leanable. The Illinois Supreme Court determined in the case of the Illinois Supreme Court in the Krohn v. Meyer when the services of a professional are leanable even though there are no current improvements such as here. In the Krohn case, an architect had drawn plans and specifications for a building. The owners of the real estate decided not to go forward with the project. The court granted a lien to the architect finding that when an architect draws plans, when they draw specifications for a building even though they do not, they superintend its construction, he performs services for the building of it. In the same holding was recognized in another case we cite, Bicol v. Nyack, where the court says to do otherwise regarding to an architect making plans. If this owner simply refused to go forward with the project, there would be no lien. And in the Krohn case, we'd also like to point out that the owners of the lot were not the ones that made the arrangements with the architect. The owners knowingly permitted that work to be done and that's what we allege in our situation here today. In this situation, the plaintiff's services were part of an overall plan to improve the lot with a very expensive coal gasification facility. As stated in the case of Cleveland Renting Company v. Central National Bank, cited in our brief, the court found that there the contractor was to strip out and demolish certain buildings in order to make way for new construction performed a lienable task even though they were not directly improving the lot because they were part of an overall plan to so improve that lot. And the same is true here. The plaintiff was engaged in engineering and support modeling services, was directly incorporated into the design of the facility, and was incorporated in that site schematic that was attached to the building permit application for the Illinois EPA. Based upon the pleadings on file that's proceeding in the affidavit of Joseph J. Massack, it's readily apparent that all the plaintiff's work was part of an integral plan for the construction of this coal gasification facility on the Chinooskee property. The plaintiff also filed his First Amendment complaint to address the circuit's court concern on ruling on defendants' motion to dismiss, one that the court indicated that the services performed by the plaintiff were similar to a feasibility study. Paragraph 10 of the plaintiff's First Amendment complaint says, for the power holding specifically instructed the plaintiff to focus its application efforts or the construction permit on this property. And that attaches Exhibit B to the plaintiff's First Amendment complaint is an indication in the permit application itself that power holdings represented itself to be the owner of the property. In paragraph 6 of the First Amendment complaint, it further alleges that the real property owners gave Anderson and its assigns, which would be power holdings here, the apparent authority to take those actions that were necessary to have that permit application proceed to Illinois EPA, including the work performed by the plaintiff. In reviewing the motion dismissed under 2619 of the Code of Self-Procedure, the court is to take all of the complete facts in the complaint as true and all reasonable inferences drawn therefrom. The court is also to consider whether there is a genuine issue of material fact that precludes dismissal as a matter of law. And here, the circuit court erred in dismissing the First Amendment complaint. All of the plaintiffs' work, their labor, and their services were necessary for the improvement of the facility as a coal gasification plant. There was engineering support modeling services directly incorporated by plaintiffs' work into the design of the facility. And further, all of the facts and reasonable inferences drawn therefrom from this First Amendment complaint show there is a genuine issue of material fact, which precludes the granting of a motion to dismiss. Power Holdings of Illinois records it as intended that the owner of the property engage the services of the plaintiff in relation to improvement of the real estate, and we allege that there was apparent authority granted by the owners of the real estate in that regard. The dismissal of the First Amendment complaint in order of dismissing the case against all parties dependent with prejudice was an error and should be reversed, and the case should be remanded back to the circuit court for further proceedings. Thank you. Thank you, Counsel. Counsel? Counsel, may it please the Court. My name is Terry Sharpe. I represent the Appalachians. Leonard and Barbara Churlisky, I think is correct. They own a 160-acre farm down on the county line. Several weeks ago I was before this Court on a case of some importance, if you recall, Your Honor. And I think the facts are a lot more interesting than these facts, and I don't think this, not only are the facts boring here, but it would be an issue of pause. But I don't know how your tie is relevant. This tie has nothing to do with it. So I'm going to try to make my argument very short. Some facts occurred before the litigation. Counsel has summarized some of them. I'm going to remind you of some of them and counteract some of his. Plaintiffs got involved with this matter before anybody had an option on their land by almost a year. I think that's very important. I made this statement in the record, and I'll stand on it. There is no evidence in the record that anyone employed for the plan ever entered upon the property of my clients in connection with this. And by the way, they call it a PSD, and I'm sure you're dying to know what a PSD is. It is Prevention of Significant Deterioration Construction Permit Application. That isn't planned, Your Honors. Counsel would like you to think that they drank due to plans. They did a study and filed something with the EPA. I have to disagree with Counsel. He has now admitted what I suspected is true. I didn't know this until this morning, that people made representations that Massardi Platt had already done something to get some preliminary approval before the Cherniskys ever signed these documents. So now we have them here wanting to lean on my client's land before my client ever knew about anything going on down there. I believe, respectfully, that that hurts the plaintiff's case. The lien was filed on January 4th of 2008, and I don't think it will surprise Your Honors to understand that my clients came to my office and they were quite upset about that. And on the 16th of that month, I wrote a letter to one Paul Embier, commenting upon my research on this, and I said, quote, No case where somebody in your position who is doing business with the presumed assignee of an option to purchase who has not made any improvements on the owner's property, friends, obviously my clients will not in any way benefit from any of the work you have done for powerholdings, and friends, can claim a mechanic's lien good and valid against the owner, the owner being my client. I believe that is still an accurate statement of law. The plans here were not used to, whatever they did, it was not used to build anything. The land today is still just absolutely flat. I'm not even sure it's ever been surveyed. It's exactly the way it was when the name of Sergeant Platt was hired to do the work. Counsel says that they did studies leading to the design. Well, that's leading to the design of plans that were being done by others and, as counsel admitted, for approval yet obtained. EPA has not signed off on this. That sounds like a preliminary study leading to a feasibility study to get a permit, and that does not sound like something that is liable under the laws of this state. One other fact, and this is from my brief, was Sergeant Platt alleged in the complaint in his brief that the agreement allowed ADA and powerholdings the authority to state that they own the Chernitsky's property. As I said in my brief, and I will stand on it again today, there is nothing in the agreement that supports such an assertion. I mean, we're back to actual apparently implied authority. If that happened, they did it on their own and not by benefit of anything that my clients agreed. Counsel correctly stated the litigation history of this case, and I would like to turn now to a very brief legal argument. I will call this the 4-3-2-1 argument. Four points of law. Every case we read about the mechanics lien law requires it to be strictly construed because it's in derogation of common law. My client's property rights are being, or hopefully not, but they're attempting to take away property rights belonging to my client from somebody they don't know, that they've never dealt with, who claims that they've done something which led to some benefit yet to be seen on their land. That strict construction, I think, keeps them from getting it. Number two, the act at 60-1, parens A, talks about improvements to a lot or land. There are no improvements on this land. It looks exactly the same as before. The third point. It is true that in certain circumstances, an engineer or architect can have a lien for improvements that are made, but it talks about improvements in or on the land. Again, we're back to the problem. There's no improvements there. And fourthly, the trial court relied on the Orenstein case. Counsel and I have briefed and re-briefed on this. I won't take up the court's time doing it, but it still comes back to the conclusion, as I think they have to agree, we're still dealing with a feasibility study. Three withouts. The work, the plaintiff's claim was started without any interest in the land. Again, I think they have to admit this is an area study. They were later directed to focus on this land, but they started work ahead of time. Presumably, they're looking at air current flows and so on and on. I don't know what they do. I'm not an engineer. Second without. The work, whatever they did, was done without going on the land. Third without. The work was completed, and there's still no change in the land. I'll give you two withs. They are with a remedy. A very significant remedy, as we point out in the brief, and they don't mention today an oral argument. There is a suit for contract and quantum error pending in DuPage County over this very same claim. It's a dispute over the value of services. Between two people in my class that doesn't have a dog in that fight, they also have a with, and that's with knowledge that services of this type are not leanable in the state of Illinois. We cite in our brief and discuss for page or two a case of resource technology. It was an appeal from the Bankruptcy Court to the U.S. District Court. It was briefed on almost the same type of situation involving different facts where the District Court, in a well-reasoned opinion, says this is not leanable. This is a feasibility study. And then we're down to one conclusion, and that conclusion is simply this. As I said in the latter part of my brief, the sorry class services did not benefit the land or the Cherniskys. Their services are too attenuated to support a lean. And to try to get back with my tie analysis, Your Honor, that simply stretches the common law and the law of mechanics leans too far. We can't get there from here. They have a contract right but not a lean right. Does Your Honor have any questions concerning my argument? I don't believe so. Thank you, Counsel. Counsel? Thank you, Your Honor. Briefly responding to some of Mr. Sharpe's comments, first regarding the strict construction of the mechanics lean statute, a case cited by both parties in their brief, Central Wrecking Company, indicates that strict construction deals with the technical aspects of the act, such as notice and procedural requirements. Here, the relevant inquiry of do we have well-fleeted facts and drawing reasonable inferences therefrom, is there a genuine issue of material fact? And we have submitted it forth in both an argument and our briefs that there is such a genuine issue of material fact as to the leanability of the services to prevent the granting of a motion to dismiss. As to the issue that there is no construction on the property at this time, and that the property is in the same condition, we had cited the case of Cohen v. Martin-Owen, the Supreme Court case, specifically for that reason, in that it indicates when you have the services professional, and there's an architect here, engineering, that they can have a lien for their services when the project does not go forward. And here it may be just time and that the permit has not been issued. However, the departments of the Counseling Act are very specific and we issued a notice that we had to follow the Counseling Act within 30 days, and we did do so. I agree with counsel. We have fully briefed the reliance on the abortion case by the Supreme Court. That's in error. Regarding the resource technology case, that's not a reported case, and we indicated that the reference to that in the brief by the defendants should be stricken. It doesn't apply. It's only a Supreme Court Rule 341G. But without waiving that objection, we indicate that's a completely distinct case. It indicated what the court did, that what was under consideration was not services for the improvement of the lot, it was services for the maintenance of the lot. I'm sorry? It was services for the maintenance of the lot. Therefore, that's the distinction. What we have here is a coal gasification facility. That is not maintenance. That is actually going to be construction. We believe, Your Honor, for all the reasons set forth in our briefs, that the dismissal of the First Amendment complaint about the Supreme Court was in error. It should be reversed and the case remanded. Thank you. Okay. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take this case under advisement. The court will be in a very short recess.